IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA

| | |
|---|---|
| GREAT NORTHERN INSURANCE COMPANY,<br><br>   Plaintiff,<br>v.<br><br>ROB MARETT INC., AND ROBERT M. MARETT JR., Individually,<br><br>   Defendants.<br>-----------------------------------------------<br>ROB MARETT, INC.,<br><br>   Defendant/Third<br>   Party Plaintiff,<br><br>MORAN FRAMING CO., INC., MICHAEL MORAN, WOODMAN INSULATION CO., INC., and AIR-TIGHT INSULATION, INC.<br><br>   Third Party Defendants, | CIVIL ACTION FILE NO.<br><br>3:07-CV-28 (CDL) |

**THIRD PARTY PLAINTIFF'S RESPONSE TO WOODMAN INSULATION CO.'S MOTION TO ENFORCE SETTLEMENT AGREEMENT OR, IN THE ALTERNATIVE, MOTION FOR DISMISSAL WITH PREJUDICE OR, IN THE ALTERNATIVE, FOR LEAVE OF COURT TO REFILE ITS MOTION FOR SUMMARY JUDGMENT**

1

## I.   INTRODUCTION

Rob Marett, Inc. ("Marett") responds to Woodman Insulation Inc.'s ("Woodman") Motion for Miscellaneous Relief showing that counsel for Rob Marett has not engaged in any deceptive act to gain an advantage over Woodman in this litigation. It was only after Plaintiff's expert Jason Sutulla testified at deposition on July 15, 2008, that any person who worked in or around the chimney chase could be liable for causing this fire did Counsel for Marett reconsider the decision to consent to dismiss Woodman without prejudice. Counsel for Marett did not intentionally misrepresent to Woodman or Mrs. Pawlak that Marett would consent to dismiss Woodman from this case. Marett even filed a dismissal without prejudice that was procedurally incorrect because there was not consent of all parties.

It is undisputed that the fire at the subject home was started after cellulose insulation, installed by Third-Party Defendant Airtight Insulation, was allowed to escape from the second story floor area into the chimney through a "4 inch gap" between the second story floor space and the chimney. This cellulose insulation accumulated at the bottom of the fireplace, became heated, and started the fire. The cellulose insulation was installed years after the completion of the home for the purpose of soundproofing the home.

Great Northern Insurance Company ("Great Northern"), Plaintiff, alleges that Marett is vicariously liable for the acts of its subcontractors for allowing the 4 inch gap to exist in violation of applicable building codes concerning fireblocking. The party or parties responsible for this "4 inch gap" is/are potentially liable for causing this fire. It is the opinion of Plaintiff's expert that that <u>any person</u> who worked in the chimney chase should have paid special attention

to this gap and may be responsible for this fire. (Deposition of Jason Sutulla, Pg. 49[1]). According to the 30(b)(6) representative of Woodman, they (Woodman) installed insulation "around the walls of the fireplace." (Deposition of Andrea Bordeleon, Pg. 51[2]).

Marett has retained Frank Hagan, PE to investigate and opine on the cause of this fire. Mr. Hagan's opinion is that insulation may have been present in the 4 inch gap prior to the fire, but he agrees that there is no direct evidence of that fact. If there was evidence of batt insulation in the gap it was removed by the fire fighters or in the cleanup process. This is one reason Marett initially thought it appropriate to dismiss Woodman. Woodman has maintained throughout this litigation that they were not hired to install fireblocking and did not install fireblocking. Although the testimony by Mr. Sutulla <u>does not</u> prove negligence against any party it at least creates a factual issue concerning Woodman's liability. A jury may well determine that the Woodman played a role in causing this fire based on this testimony alone.

Woodman's motion to enforce settlement should be denied because Marett did not have a settlement agreement with Woodman; The agreement was not a bargained for exchange of consideration. Assuming arguendo that Marett agreed to dismiss Woodman, Marett's consent or the enforcement of the alleged settlement agreement is a nullity if the other parties to the lawsuit do not agree to the dismissal. Because sanctions are not appropriate, Woodman cannot be dismissed with prejudice. Last, Marett consents to allow Woodman to refile its Motion for Summary Judgment and would consent to allow Mrs. Pawlak to depose Mr. Hagan if she wishes.

---

[1] This portion of Mr. Sutulla's deposition is attached as "Exhibit A". As of the date of filing this response, the errata sheet has not been returned by Mr. Sutulla. Counsel for Marret is not in possession of an original deposition transcript. When the errata sheet is returned, Marett will file the entire deposition of Mr. Sutulla.
[2] This portion of Mrs. Bordeleon's deposition is attached as "Exhibit B". The entire transcript has been filed with the Court.

I.  **THERE WAS NOT AN ENFORCEABLE SETTLEMENT AGREEMENT BETWEEN WOODMAN AND MARETT WHEN MARETT AGREED TO DISMISS WOODMAN WITHOUT PREJUDICE**

Woodman requests this Court to enforce the agreement to dismiss Woodman without prejudice. The correspondence between Marett and Woodman does not amount to an enforceable settlement agreement between the parties. Marett does not disagree that there was an agreement for Marett to dismiss Woodman without prejudice. This agreement was not, however, supported by a bargained for exchange of consideration. To constitute a valid contract, there must be "consideration moving toward the contract." O.C.G.A. § 13-3-1 (2008).

Counsel for Woodman sent Marett's counsel a Rule 11 letter giving notice of Woodman's intent to seek sanctions against Marett. Marett disagrees that its claims against Woodman are frivolous or were unsupported when the third-party complaint was filed. Woodman filed a Motion for Summary Judgment that this Court denied. [DOC. 62]. Mr. Sutulla's opinion that any person who worked in the chimney chase could be responsible for this fire supports Marett's allegations. (Sutulla Depo., pg. 49). Woodman did not have a valid argument in favor of sanctions against Woodman and the threat of the sanctions cannot be considered consideration to enforce this settlement agreement. *Compare, Victoria E. Ullmann v. Olwine, Connelly, Chase O'Donnell & Weyher*, 123 F.R.D. 253, 256 (S.D. OH 1987) (holding that a only a "strong" claim for Rule 11 sanctions is sufficient consideration to support a settlement).

With this agreement, neither party agreed to give up anything of value to the other party. Woodman threatened to seek sanctions if Marett did not dismiss Woodman from this lawsuit and Marett agreed to dismiss Woodman without prejudice. Marett did not give up any right of action

4

against Woodman for contribution or indemnity by dismissing Woodman <u>without prejudice</u>. Likewise, Woodman's threat of sanctions was without merit. Regardless, Woodman is still able to seek Rule 11 sanctions and is therefore not prejudiced by any delay that may have been caused by Marett's withdrawal of consent to dismiss Woodman.

### II. ENFORCING THE SETTLEMENT AGREEMENT WOULD NOT DISMISS WOODMAN FROM THIS LAWSUIT WITHOUT CONSENT OF ALL PARTIES

If the settlement agreement is enforced, it only puts the parties in the same position as they were prior to Marett withdrawing consent to dismiss Woodman. Marett attempted to unilaterally dismiss Woodman from this litigation but was reminded that all parties had to agree to the dismissal once the litigation had been joined. [DOC. 76]. The Affidavit attached to Woodman's motion indicates that at least one party (Air-Tight Insulation) would not agree to the dismissal. (Pawlak Affidavit, ¶ 16). If all parties do not agree to the dismissal, Woodman cannot be dismissed from the lawsuit. The agreement between Woodman and Marett was moot without agreement of all parties.

### III. COUNSEL FOR MARETT DID NOT INTENTIONALLY DECEIVE MRS. PAWLAK AND MARETT SHOULD NOT BE SUBJECT TO SANCTIONS

Counsel for Woodman has made allegations against Marett's Counsel (John Jackson) that are false. The allegations are not supported by the correspondence between the parties or the fact that Marett's counsel attempted (although wrong) to dismiss Woodman insulation without prejudice by the filing of a dismissal. [DOC. 75]. Woodman alleges that Marett, through his counsel, lied to counsel for Woodman when counsel agreed to dismiss Woodman from this litigation. In its motion, Woodman asks for sanctions because Woodman "has been wrongfully

and fraudulently" deprived of the right to be present at the deposition of experts. Further, there are allegations that Marett's Counsel has acted unethically. These allegations made by Mrs. Pawlak are untrue and not supported by the facts.

Woodman asks for the Court to dismiss Marett's claims against Woodman based on Federal Rule of Civil Procedure 41(b). This rule states that "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." USCS Fed Rules Civ Proc R 41. "A dismissal with prejudice, whether on motion or sua sponte, is an extreme sanction that may be properly imposed only when (1) a party engages in a clear pattern of delay or willful contempt, contumacious conduct; and (2) the district court specifically finds that lesser sanctions would not suffice." *Betty K. Agencies, Ltd. v. MIV Monada*, 432 F.3d 1333, 1337 (11th Cir. 2005). A Court can dismiss an action for failure to comply with the federal rules of civil procedure or an order of the court. *Meeker v. Rizley*, 324 F.2d 269 (10th Cir. 1963). The harsh sanction of dismissal is reserved for the most extreme cases. "The harsh sanction of dismissal with prejudice is thought to be more appropriate in a case where a party, as distinct from counsel, is culpable." *Francies v. Brandon*, 2008 U.S.App Lexis 15164 (11th Cir. 2008). Woodman's issues are with Marret's counsel rather than Mr. Marett and the sanction of dismissal is not favored in this situation. *Id.*

There was not an intentional misrepresentation when counsel agreed to dismiss Woodman without prejudice. In order to show an intentional misrepresentation a finding of specific intent to cause harm is inherent. This requires the court to find an "<u>intentional misrepresentation intended to deceive and made for the purpose of injuring another</u>." *Mcdaniel v. Elliot*, 269 Ga. 262, 265, 497 S.E.2d 786 (1999). Woodman fails to show an intent to deceive or to cause harm. Woodman represents that Marret's counsel never intended to dismiss

6

Woodman. It is acknowledged in Woodman's Motion that Counsel for Marett filed a dismissal, asked for permission from other parties for dismissal, and changed the proposed language of the dismissal. (Woodman's Motion, ¶¶ 2, 3, 5 & 8). There is not a factual basis for Mrs. Pawlak to call Marret's counsel a liar. There is likewise not a proper basis for sanctions.

It was after Mr. Sutulla opined that anyone who worked in the chimney area could be responsible for this fire that counsel for Marett was forced to reconsider its consent to dismiss Woodman. Although Mr. Sutulla has no specific criticism of Woodman, Mr. Sutulla has a different theory for negligence against Marett's subcontractors. Mr. Sutulla testified that anyone working in the area of the chase "should have paid special attention to how to properly firestop in the region around the chimney, as a good practice." (Deposition of Jason Sutulla, Pg. 49). "[A]nyone who is performing work in that area should be paying attention to those issues." (*Id.*). This is a different theory than Marett originally thought Plaintiff was going to argue because Mr. Sutulla's opinion doesn't criticize Woodman for not installing insulation but for being in the chimney and not noticing this gap. This opinion would allow a jury to find any party, regardless if they were hired to fireblocking or not, to be held responsible for the fire.

Woodman's motion also refers to contumacious conduct by Marett's counsel. Woodman has not referred to any order of this court that counsel for Woodman has violated to support this argument.

IV. **COUNSEL FOR WOODMAN SHOULD HAVE BEEN AWARE THAT ALL PARTIES WOULD NOT CONSENT TO THE DISMISSAL BEFORE THE DEPOSITIONS OF EXPERTS**

Mrs. Pawlak's affidavit attached to Woodman's motion shows that she should have been aware that not all the parties to the lawsuit would consent to dismiss Woodman before the expert deposition took place on July 9th and 15th. On July 3, 2008, Woodman prepared a dismissal and

emailed it to all parties asking for consent to the dismissal. (Pawlak Affidavit, ¶ 10). Other than a response from Marett's counsel, there was no response to that email from the other three parties. (*Id.* at ¶¶ 11,12). Marett's counsel had already discussed with Mrs. Pawlak that the other parties had not consented to the dismissal. (*Id.* at ¶ 6). The other parties had 6 days to respond to Mrs. Pawlak's request and did not respond. This was all before the first expert deposition (July 9th) that Mrs. Pawlak states she did not attend based solely on Marett's consent to dismiss. If all the parties had to consent and it was apparent that the parties were not going to consent, Mrs. Pawlak's decision not to attend the depositions was done at her own risk.

Notwithstanding Mrs. Pawlak's own decisions that played a role in any alleged prejudice to her client, Marett will allow Woodman to take another deposition of Frank Hagan if Woodman wants to add to his deposition testimony.

## V. MARETT CONSENTS TO ALLOWING WOODMAN TO FILE A MOTION FOR SUMMARY JUDGMENT IF THE COURT, IN ITS DISCRETION, FINDS IT APPROPRIATE

Marett has no objection to Woodman's alternative relief granting leave to allow Woodman to file a Motion for Summary Judgment.

## VI. CONCLUSION

For the reasons, stated herein Marett requests that Woodman's Motion for Enforcement of the Settlement Agreement and Motion for Sanctions be denied.

This 19th day of August, 2008.

WEINBERG, WHEELER, HUDGINS, GUNN & DIAL, LLC

*/s/ John B. Jackson*

**DAVID I. MATTHEWS**
Georgia Bar No. 477510
**JOHN B. JACKSON**
Georgia Bar No. 387190

*Attorneys for Defendants/Third-Party Plaintiff*

950 East Paces Ferry Road
Suite 3000
Atlanta, Georgia 30326
404-876-2700
404-875-9433 - Fax

# EXHIBIT A

Page 1

IN THE UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF GEORGIA



---------------------------------------------X

GREAT NORTHERN INSURANCE CO.,    *

Plaintiff                        *

                  Vs.    * Civil Action File No.

ROB MARETT, INC., and ROB M.     * 3:07-CV-28 (CDL)

MARETT, JR., Individually,       *

Defendants                       *

---------------------------------------------X

ROB MARETT, INC.,                *

Defendant/Third-Party Plaintiff  *

                  Vs.    *

MORAN FRAMING CO., INC., et al,  *

Third-Party Defendants           *

---------------------------------------------X

        Deposition of JASON A. SATULA, P.E.

              Columbia, Maryland

           Tuesday, July 15, 2008

                 9:45 a.m.

Job No.: 22-133655

Pages 1 - 161

Reported by: Dianna C. Kilgalen, RPR.

Case 3:07-cv-00028-CDL   Document 81   Filed 08/19/08   Page 12 of 16

Page 49

1  such a way that a gap was present that was not

2  adequately fire stopped or fire blocked.

3      Q.   Are you saying that Mr. Marett should have

4  paid special attention to this chase?

5      A.   I would say that anyone who was working in

6  the location of this chase should have paid attention

7  to how to properly fire stop in the region around the

8  chimney, as a good practice. Ultimately, that

9  responsibility will fall on the general contractor, but

10 anyone who is performing work in that area should be

11 paying attention to those issues.

12     Q.   And do you have any resource that supports

13 that the general contractor or anyone -- or his subs,

14 should have paid special attention because of the

15 design of this flue and chase?

16     A.   I do believe in Mr. Marett's deposition, that

17 he indicated that ultimate responsibility for

18 appropriate construction of the house did fall in his

19 domain.

20     Q.   I understand that. I'm just saying the

21 special attention that you said, is there any

22 particular resource or authority that requires special

23 attention when there's maybe an alteration from the

# EXHIBIT B

```
           IN THE UNITED STATES DISTRICT COURT
                 MIDDLE DISTRICT OF GEORGIA

GREAT NORTHERN INSURANCE     :
COMPANY,                     :
                             :
        Plaintiff,           :
                             :
vs.                          :
                             :
ROB MARETT, INC., and        :
ROBERT M. MARETT, JR.,       :
Individually,                :
                             :
        Defendants.          :   Civil Action File No.
_____     3:07-CV-28(CDL)
                             :
ROB MARETT, INC.,            :
                             :
        Defendant/Third      :
        Party Plaintiff,     :
vs.                          :
                             :
MORAN FRAMING CO, INC.,      :
MICHAEL MORAN, WOODMAN       :
INSULATION CO., INC. and     :
AIR-TIGHT INSULATION, INC.,  :
                             :
        Third Party          :
        Defendants.          :
_____
```

Deposition of
**ANDREA BORDELON**

Tuesday, May 6, 2008
10:16 a.m. - 12:36 p.m.

5605 Glenridge Drive - Suite 900
Atlanta, Georgia 30342

---

*CYNTHIA F. WILLIAMS*
Certified Court Reporter

3030 Scepter Drive                        770-232-2902
Duluth, Georgia 30096                     770-232-4999 (Fax)
                                          cynthiafwilliams@bellsouth.net

```
 1   Woodman Insulation went out to insulate the home; is
 2   that accurate, ma'am?
 3        A    That's right.  The fireplaces are always in
 4   the house by the time the crews go there to install
 5   the insulation.  But as to whether they were there
 6   when I went there ...
 7        Q    You don't recall?
 8        A    I don't recall.
 9        Q    So the fireplace actually has to be
10   installed before your company can do the insulation
11   work; is that correct?
12        A    That is correct.
13        Q    In this home, in the Marett residence, did
14   the folks from Woodman Insulation provide any
15   insulation material at all around the fireplace
16   chase?
17        A    Yes.  We put it around the walls of the
18   fireplace.  You can take any kind of energy exchange
19   from the outside wall to the inside of the house.
20        Q    How about in the ceiling of the family room
21   or the living room area of the home, do you remember
22   that area?
23        A    No.  We would not do that because, one, it
24   is too large of an area and there is no way to get the
25   insulation secured if it was not framed in there at
```

**CERTIFICATE OF SERVICE**

I hereby certify that on August 19, 2008, a true and correct copy of the foregoing Third Party Plaintiff's Response to Plaintiff's Motion to Enforce Settlement Agreement or, in the Alternative, Motion for Dismissal with Prejudice Or, In The Alternative, For Leave Of Court To Refile Its Motion For Summary Judgment has been uploaded into the CM/ECF system, which will send electronic notice to all counsel of record.

| | |
|---|---|
| Robert M. Finlayson, II, Esq.<br>Ruth M. Pawlak, Esq.<br>Mozley, Finlayson & Loggins, LLP<br>One Premier Plaza, Suite 900<br>5605 Glenridge Drive<br>Atlanta, Georgia  30342<br>ccrawford@mfllaw.com | Robert Youngblood, Esq.<br>2844 Lawrenceville-Suwanee Road<br>Suite 760, No. 413<br>Suwanee, Georgia  30024<br>bobyoungblood@mindspring.com |
| Robert E. Jones<br>Cozen O'Connor<br>2200 SunTrust Plaza<br>303 Peachtree Street, N.E.<br>Atlanta, Georgia  30308<br>rejones@cozen.com | William A. Dinges, Esq.<br>Temple, Strickland, Dinges & Schwartz<br>3576 Covington Highway<br>Suite 100<br>Decatur, Georgia  30032<br>wad@tsdslaw.com |
| | WEINBERG, WHEELER, HUDGINS, GUNN & DIAL, LLC<br><br>*/s/ John B. Jackson*<br><br>**JOHN B. JACKSON**<br>Georgia Bar No. 387190 |